# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LETICIA RIOS MORA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | NO. CV 06-4775 FMO<br><br>**ORDER Re: JOINT STIPULATION** |

## PROCEEDINGS

Plaintiff filed a Complaint on August 1, 2006, seeking review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. § 405(g). Thereafter, the parties consented to proceed before the undersigned United States Magistrate Judge. On June 11, 2007, the parties filed a Joint Stipulation ("Joint Stip."). The court has taken the matter under submission without oral argument.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is

expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

| | | |
|---|---|---|
| Step one: | Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. |
| Step two: | Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. |
| Step three: | Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four. |
| Step four: | Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. |
| Step five: | Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. |

20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); Tackett, 180 F.3d at 1098.

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, who was 45 years of age on the date of her administrative hearing, has an eighth grade education in Mexico. (Administrative Record ("AR") at 13, 85, 380 & 408). Her past relevant work includes employment as a cook's helper, a packer and a child care provider. (Id. at 13, 80 & 112).

Plaintiff protectively filed for disability benefits on June 3, 2003, alleging that she has been disabled since August 15, 2001,[1] due to diabetes and nerve damage in her right arm. (See AR at 13 & 380-81). Plaintiff's applications were denied initially and upon reconsideration, after which she filed a timely request for a hearing. (Id. at 13, 56 & 384-87).

---

[1] The Administrative Law Judge indicates in his decision that plaintiff alleges she became disabled on August 15, 2002. (See AR at 13). Plaintiff's disability application, however, provides that plaintiff alleges a disability onset date of August 15, 2001. (See id. at 381).

On January 24, 2005, plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (AR at 13, 408-11 & 427-33). Michael Gurvey, a medical expert ("ME"), and Ronald Hatakeyama, a vocational expert ("VE"),[2] also testified. (Id. at 13 & 411-27).

The ALJ denied plaintiff's request for benefits on April 28, 2005. (AR at 13-17). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (Id. at 13 & 16). At step two, the ALJ found that plaintiff "has severe right shoulder impairments and non-severe morbid obesity, diabetes mellitus, left shoulder condition, back and neck pain and adjustment disorder[.]" (Id. at 16; see also id. at 14). At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[3] (Id. at 15 & 16-17).

The ALJ then assessed plaintiff's residual functional capacity[4] ("RFC") and determined that she can perform medium work. (See AR at 15 & 17). Specifically, the ALJ made the following findings regarding plaintiff's RFC:

> [plaintiff] is capable of sitting for 6 hours in an 8 hour workday and standing and/or walking similarly, lifting and carrying 50 pounds occasionally and 25 pounds frequently below shoulder level (without below shoulder level restrictions on pushing or pulling), but cannot repetitively do over-the-shoulder tasks with the right upper extremity or lift in excess of 5 pounds

---

[2] The VE is mistakenly referred to as "Hatakeyana" in the ALJ's opinion and as "Atokeoma" in the hearing transcript. (Compare AR at 25 (VE's curriculum vitae) with id. at 13 & 412).

[3] See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

3

above shoulder level with that extremity, and should avoid climbing ladders and scaffolds (due to obesity).

(Id. at 15; see also id. at 17). Based on plaintiff's RFC and the VE's testimony, the ALJ found, at step four, that plaintiff "can perform her past relevant work." (Id. at 16; see also id. at 17). Accordingly, the ALJ concluded that plaintiff was not suffering from a disability as defined by the Act. (Id. at 16 & 17).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (See AR at 4-6). The ALJ's decision stands as the final decision of the Commissioner.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001, as amended Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" Id. (quoting Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**DISCUSSION**

I. THE ALJ IMPROPERLY EVALUATED THE MEDICAL EVIDENCE.

Plaintiff contends that the ALJ improperly evaluated the medical evidence by adopting the opinion of the nonexamining, testifying ME over the opinions of plaintiff's treating physicians, Drs. Hillel Sperling ("Dr. Sperling"), Alejandro Gonzalez ("Dr. Gonzalez") and Robert M. Gromis ("Dr. Gromis"), and the state agency nonexamining physicians, Drs. Lavanya Bobba ("Dr. Bobba") and George W. Bugg ("Dr. Bugg"), without providing specific and legitimate reasons for doing so. (See Joint Stip. at 4-9 & 15-17). Specifically, plaintiff argues that the ALJ erred in giving controlling weight to the ME's opinion regarding the severity of plaintiff's impairments and plaintiff's RFC because the ME's opinion was not consistent with other medical evidence in the record. (See id. at 4 & 15).

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995, as amended April 9, 1996); see also 20 C.F.R. §§ 404.1527(d) & 416.927(d) (prescribing the respective weight to be given the opinion of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; accord Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Benton, 331 F.3d at 1036; see also Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons.") (italics in original). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion

1 without providing specific and legitimate reasons supported by substantial evidence in the
2 record[.]" Lester, 81 F.3d at 830 (internal quotation marks and citation omitted); accord Reddick,
3 157 F.3d at 725.

4       "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion
5 of a nonexamining physician." Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d)(1)-(2)
6 & 416.927(d)(1)-(2). If the opinion of an examining physician is rejected in favor of the opinion of
7 a nonexamining physician, the ALJ may do so only by providing specific and legitimate reasons.
8 Lester, 81 F.3d at 830-31. The ALJ can meet the requisite specific and legitimate standard "by
9 setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating
10 his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.
11 1989) (internal quotation marks omitted). Finally, "[t]he opinion of a nonexamining physician
12 cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either
13 an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (italics in original); accord
14 Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ruling that "the report of [a] non-treating,
15 non-examining physician, combined with the ALJ's own observance of claimant's demeanor at the
16 hearing[]" did not constitute "substantial evidence" and, therefore, did not support the
17 Commissioner's decision to reject examining physician's opinion").

18       On December 20, 2002, plaintiff was examined by Dr. Michael J. Patzakis ("Dr. Patzakis"),
19 an agreed-upon medical examiner, as part of her worker's compensation claim. (See AR at 137-
20 44). Dr. Patzakis opined that plaintiff had limitation of motion in her right shoulder and precluded
21 her from work requiring use of her right upper extremity at or above shoulder level and/or heavy
22 lifting below the shoulder level. (Id. at 143). He also stated that plaintiff had less motion in her
23 right shoulder then she had before her shoulder surgery in August 2002. (Id. at 144; see also id.
24 at 140 (discussing plaintiff's right shoulder surgery in August 2002)). Finally, Dr. Patzakis
25 indicated that his assessment only involved examination of plaintiff's upper extremity impairments,
26 as her other physical impairments, including obesity and diabetes, were not industrially related.
27 (See id. at 144) ("She complains of symptoms related to other parts of her body but these are not
28 industrially related in my opinion.").

On April 16, 2003, Dr. Gromis performed an internal medicine evaluation of plaintiff at the request of plaintiff's treating physician, Dr. Sperling, in connection with plaintiff's worker's compensation claim. (See AR at 211-20). Dr. Gromis opined that plaintiff's limitations caused by her existing obesity and diabetes were exacerbated by work related stress and chronic pain in plaintiff's neck, back and right shoulder. (See id. at 218-19).

On August 7, 2003, Dr. Bobba, a state agency nonexamining physician, opined that plaintiff could frequently lift 10 pounds, stand or walk at least 2 hours in an 8 hour work day, sit with normal breaks for a total of 6 hours in an 8 hour work day and was limited to occasional pushing, pulling and overhead reaching with her upper extremities. (See AR at 336, 338 & 342). Dr. Bobba also provided that plaintiff could occasionally stoop, kneel, crouch, crawl and climb ladders, ropes or scaffolds. (See id. at 337). On November 21, 2003, Dr. Bugg, another nonexamining physician, affirmed Dr. Bobba's assessment of plaintiff's limitations. (See id. at 342).

On May 12, 2004, Dr. Sperling, plaintiff's treating orthopedist, completed a physical residual functional capacity questionnaire regarding plaintiff's limitations. (See AR at 349-52). Dr. Sperling explained that plaintiff's diagnoses are status post right shoulder open acromioplasty with rotator cuff repair,[5] left shoulder impingement,[6] cervicothoracic and lumbar strain, and obesity. (Id. at 349). Dr. Sperling opined that plaintiff can occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk 2 hours in an 8 hour workday and sit less than 6 hours in an 8 hour workday. (Id. at 350). She also provided that plaintiff requires a job that permits shifting positions from sitting to standing and/or walking as needed and may need to take unscheduled breaks in an 8 hour workday. (Id.). Finally, Dr. Sperling stated that plaintiff cannot do repetitive pushing or pulling, is precluded from overhead reaching and must avoid temperature extremes, heights, vibration and work with heavy machinery. (Id. at 351).

---

[5] Open acromioplasty with rotator cuff repair is a surgery that involves removal of small amounts of bone and/or loose fragments of tendon, bursa and other debris from the torn area of the shoulder joint. See Wheeless' Textbook of Orthopaedics, http://www.wheelessonline.com.

[6] Shoulder impingement is a syndrome that involves pain in the shoulder joint that can lead to a rotator cuff tear, which may require surgical repair. See id.

1    On June 25, 2004, Dr. Gonzalez, plaintiff's treating physician since November 1996, 2 completed a physical functional capacity questionnaire. (See AR at 354-57). According to Dr. 3 Gonzalez, plaintiff's diagnoses include morbid obesity, diabetes and right shoulder pain. (Id. at 4 354). Dr. Gonzalez indicated that plaintiff can occasionally lift less than 10 pounds, stand or walk 5 less than 2 hours in an 8 hour workday and sit less than 6 hours in an 8 hour workday. (Id. at 6 355). He also provided that plaintiff needs employment that permits shifting positions from sitting 7 to standing and/or walking and unscheduled breaks throughout the day. (Id.). Dr. Gonzalez 8 opined that plaintiff's impairments would cause her to miss more than three days of work per 9 month and that her obesity requires that she perform only limited pushing or pulling with her upper 10 and lower extremities. (Id. at 355-56). Finally, a letter from Dr. Gonzalez, dated January 27, 11 2005, states that plaintiff is unable to stand, sit or walk for prolonged periods of time due to her 12 impairments and that she suffers from morbid obesity, diabetes mellitus, hyperlipidemia,[7] 13 dyspnea,[8] hypertension and arthralgia[9] with limited mobility as a result of her obesity. (Id. at 379).

At the hearing, the following exchange took place between the ALJ and the ME:

[ALJ]: Did you review the record, if so, what does the claimant present with?

[ME]: Yes, I have reviewed 1 through 12F, Your Honor, and basically there are six areas of medical problems that I have identified. Actually five, two of them are for one area. The first one would be a status post arthroscopy of the right shoulder for an impingement. And then followed by an open acromia plasty [phonetic] of the right shoulder. The second area is obesity [INAUDIBLE] apparently. The third area is diabetes mellitus. The fourth area is depression. The fifth area is low back pain. There's a brief mention today of some neck pain.

---

[7] Hyperlipidemia is the elevation of lipids in the blood. See Stedman's Medical Dictionary ("Stedman's") 826 & 985 (26th ed. 1995).

[8] Dyspnea is "a subjective difficulty or distress in breathing[.]" Stedman's at 535.

[9] Arthralgia is "[s]evere pain in a joint, especially one not inflammatory in character." Stedman's at 149.

8

1     [ALJ]: With respect to problems one and five –

2     [ME]: Yes.

3     [ALJ]: – any listing met or equaled?

4     [ME]: No.

5     [ALJ]: Notwithstanding that, what would be her restrictions? . . .

6     [ME]: The functional capacity assessment would be, I think below shoulder level she could lift 50 pounds frequently, I mean occasionally and 25 pounds frequently. She could sit, stand, and walk six out of eight hours with the usual breaks. Below shoulder level there would be no restrictions with regard to push, pull. Posturally she probably should avoid climbing ladders and scaffolds. And my concern here is primarily because of her weight.

13     [ALJ]: I understand. Anything else?

14     [ME]: Yes, as far as manipulative there should be no repetitive over shoulder work with the right upper extremity and no more lifting more than five pounds above shoulder level on the right. There would be no other restrictions including environmental and visual.

18     [ALJ]: Well, thank you.

(AR at 411-12) (brackets in original).

In his decision, the ALJ rejected the opinions of plaintiff's treating physicians and the nonexamining physicians regarding the severity of plaintiff's impairments and her RFC, and adopted the opinion of Dr. Gurvey, the nonexamining ME. (See AR at 14-15). Specifically, the ALJ explained that he rejected "the opinion of Dr. Gromis that suggests a specific restriction to stress." (Id. at 14) (internal citation omitted). The ALJ also stated that, "[a]lthough treating source Dr. Sperling has diagnosed left shoulder impingement syndrome, Dr. Gurvey testified that the evidence supports only submacromial tenderness and explained that this is not the same condition." (Id.) (internal citation omitted). The ALJ then concurred with the ME's opinion that plaintiff suffers "no specific limitations linked to the left shoulder." (Id.). The ALJ also adopted the

9

ME's assessment that the limitations on sitting, standing and walking contained in the opinions of Drs. Sperling and Gonzalez "could not be justified by the upper extremity involvement or any cervical spine involvement." (Id. at 15). Finally, the ALJ rejected Dr. Gonzalez's RFC assessment and his letter explaining plaintiff's impairments on the basis that they are "conclusory," stating as follows:

> Dr. Gurvey rejected Dr. Gonzalez's opinion partially on the basis that it was based on a one-time visit. This is not totally accurate, as Dr. Gonzalez reports treatment since 1996 and presents office notes. However, his records do not comport with his assessment. They are weak in the objective realm. In fact, Dr. Gonzalez consistently relates normal physical examinations and, when commented upon at all, nonfocal neurological exams. The office notes do not even reflect subjective complaints pertaining to the functions that he limits in the assessment. Thus, the assessment is not supported, is countered by more probative evidence, and the ALJ rejects it.

(Id.).

Under the circumstances here, none of the reasons provided by the ALJ for rejecting the opinions of plaintiff's treating physicians are legally sufficient and/or supported by substantial evidence. First, the record does not support defendant's claim that "there were conflicting medical opinions as to [p]laintiff's physical functional limitations during the relevant period[.]" (Joint Stip. at 11). On the contrary, the medical evidence relating to plaintiff's functional limitations is, for the most part, consistent. (See, generally, AR at 137-44, 206-07, 209-20, 335-42, 349-52, 354-71). Thus, the ALJ was arguably required to provide clear and convincing reasons for rejecting the uncontradicted opinions of plaintiff's treating physicians. See Reddick, 157 F.3d at 725 ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record.") (internal quotation marks and citation omitted). However, because the ALJ failed to provide even specific and legitimate reasons supported by substantial evidence for his rejection of plaintiff's treating

physician opinions, it follows that the ALJ's analysis also failed to meet the higher standard of clear and convincing reasons.

Second, other than stating that he was rejecting Dr. Gromis's opinion, (see AR at 14), the ALJ failed to provide any reason, let alone a specific and legitimate one, for rejecting his opinion regarding the severity of all of plaintiff's impairments in combination. See Reddick, 157 F.3d at 725 (Rejection of a treating physician's opinion requires "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the [treating] doctors', are correct.") (internal citation omitted). The ALJ erred in rejecting Dr. Gromis's opinion without providing "specific and legitimate" reasons for so doing. See Lester, 81 F.3d at 830.

Third, the ALJ failed to provide specific and legitimate reasons for disregarding the opinions of plaintiff's treating physicians regarding the severity of her impairments and plaintiff's residual functional capacity. The ALJ rejected the opinions of plaintiff's treating physicians by, in effect, relying on the opinion of the nonexamining ME, Dr. Gurvey. (See AR at 14-16). However, Dr. Gurvey's opinion that plaintiff retained the RFC for medium work, (see id. at 412), is not supported by any of the medical evidence in the record. Indeed, Dr. Gurvey's opinion that plaintiff retained the RFC to perform medium work was contradicted by Drs. Sperling and Gonzalez, who opined that plaintiff could stand or walk about 2 hours in an 8 hour day and sit less than 6 hours in an 8 hour day.[10] (See id. at 350 & 355). Under the circumstances, Dr. Gurvey's opinion cannot constitute substantial evidence to support the ALJ's rejection of the opinions of plaintiff's treating

---

[10] In addition, although the ME indicated that he did not think that the limitations on plaintiff's ability to sit, stand or walk could be caused by her upper extremity impairment, he also acknowledged that plaintiff's treating physicians would be in a better position to assess any functional limitations caused by her obesity and that assessing any limitations caused by plaintiff's diabetes was "outside [his] area of expertise[.]" (See AR at 423-26); see also Sprague, 812 F.2d at 1230 (treating physician opinion generally entitled to more weight because treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual[]").

11

physicians.[11] See Lester, 81 F.3d at 832 ("In the absence of record evidence to support it, the nonexamining medical advisor's testimony does not by itself constitute substantial evidence that warrants a rejection of . . . the treating doctor's . . . opinion."); Erickson v. Shalala, 9 F.3d 813, 818 n. 7 (9th Cir. 1993) ("the non-examining physicians' conclusion, *with nothing more*, does not constitute substantial evidence[]") (internal quotation marks, brackets and citation omitted) (italics in original); Gallant, 753 F.2d at 1454 (when the nonexamining opinion is contradicted by all other evidence in the record, that opinion does not constitute substantial evidence).

      Finally, although the ALJ states that the ME's assessment is similar to the opinion of Dr. Patzakis, (see AR at 15), Dr. Patzakis's examination only concerned plaintiff's limitations caused by her work related injuries and, thus, he did not consider the full extent of plaintiff's functional limitations caused by the combination of her impairments. (See id. at 144) (Dr. Patzakis indicating that he only assessed plaintiff's work related impairments); see also Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (ALJ's RFC determination requires consideration of all of plaintiff's severe and nonsevere impairments). As a result, Dr. Patzakis's opinion does not support the ME's assessment that plaintiff can perform medium work. Moreover, at the hearing, the VE testified that if plaintiff had the functional limitations contained in Dr. Patzakis's opinion, she would be unable to perform her past relevant work. (See AR at 414) (VE testimony that if plaintiff had limitations contained in the opinions Drs. Patzakis, Sperling or Gonzalez, she would be unable to perform her past relevant work). Thus, in reaching his conclusion, the ALJ erred by ignoring competent evidence that suggested an opposite result. See Gallant, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted).

---

[11] The ALJ's rejection of plaintiff's treating physician opinions is further undermined by the state agency nonexamining physician opinions, which provide RFC assessments that are largely consistent with the treating physicians' RFC assessments. (Compare AR at 335-42 with id. at 349-52 & 354-57); see also Andrews, 53 F.3d at 1041 (opinion of a nonexamining physician may constitute substantial evidence when it is supported by other evidence in the record and consistent with it).

II.   REMAND IS APPROPRIATE.

The court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989, as amended Oct. 19, 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Harman v. Apfel, 211 F.3d 1172, 1179-80 (9th Cir. 2000, as amended May 4, 2000), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 595-96; Harman, 211 F.3d at 1179-80.

Here, remand is required because the ALJ erred in his evaluation of the medical evidence.[12] First, because the ALJ did not provide specific and legitimate reasons for his rejection of plaintiff's treating physician opinions, the opinions of Drs. Gromis, Sperling and Gonzalez shall, on remand, be credited as a matter of law. See Widmark v. Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006) ("Because the ALJ failed to provide adequate reasons for rejecting [the examining physician]'s opinion, we credit it as a matter of law."); Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001, as amended August 9, 2001) (crediting, as a matter of law, improperly rejected treating physician opinion). Second, the ALJ shall begin his evaluation with step two, and reassess the severity of plaintiff's impairments, both individually and in combination. See Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (holding an ALJ's determination that a person does not have a medically severe impairment must be "clearly established by [the] medical evidence[]") (internal quotation marks and citation omitted); Edlund, 253 F.3d at 1158 (quoting Smolen, 80 F.3d at 1290) (The step-two inquiry is defined as "'a de minimis screening device to dispose of groundless

---

[12]   In light of the court's determination that the ALJ did not properly evaluate the medical evidence, it is not necessary to address plaintiff's remaining contentions. (See Joint Stip. at 17, 20-23 & 26-27). The parties, however, shall not be precluded from addressing those issues, or any other issues, on remand.

claims.'"). Third, the ALJ must reassess whether plaintiff's combination of impairments meet or equal those listed in 20 C.F.R. part 404, subpart P, appendix 1. Next, the ALJ shall consider all of plaintiff's limitations in making the RFC determination. At step four, the ALJ must, with the assistance of a VE, determine whether plaintiff can perform her past relevant work. Finally, if plaintiff cannot perform her past relevant work, the ALJ shall, at step five, assess plaintiff's capacity to perform other work existing in significant numbers in the regional and national economies.

This decision is not intended for publication.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **reversing** the decision of the Commissioner denying benefits and **remanding** the matter for further administrative action consistent with this decision.

Dates this 11th day of September, 2007.

/s/
Fernando M. Olguin
United States Magistrate Judge